IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| OAKWAY GOLF, INC., | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 240038G |
| | ) | |
| v. | ) | |
| | ) | |
| LANE COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

On summary judgment, Plaintiff challenges whether Defendant properly changed the

taxpayer named in Account 1901865 (subject account) on the 2019–20, 2020–21, and 2022–23

rolls.

## I. STATEMENT OF FACTS

Plaintiff owns a warehouse in Springfield that it leased to STEM Holdings, Inc., in 2016

for use as a marijuana grow facility. (Ptf's Mot Summ J at 5; Def's Mot Dismiss, Ex B at 1.) In

2019, in consultation with Plaintiff, Defendant established the subject account as an

improvements-only account for the interior improvements within Plaintiff's warehouse. (Ptf's

Mot Summ J at 5; Def's Response at 3.) At that time, Defendant placed the subject account in

the name of STEM Holdings. (*Id*.) The property taxes on the subject account remained unpaid

until Defendant began foreclosure proceedings in 2023. (Ptf's Response, Ex 1 at 2.)

While foreclosure was pending, STEM Holdings contacted Defendant and requested that

Plaintiff be substituted for it as the taxpayer named on the subject account. (Ptf's Response, Ex

1 at 2.) Defendant's internal emails show that a copy of Plaintiff's lease agreement with STEM

Holdings was shared among Defendant's staff on October 20, 2023. (Def's Surreply, Ex D at 2.)

The next day, a member of Defendant's staff emailed her interpretation of the lease and asked:

"Since the contract doesn't actually include that the tenant is responsible for the taxes on the TI's [tenant improvements], should we change the name on the TI account back to Oakway Golf?" (*Id*.)  Additional emails followed, and Defendant herself (Mary Vuksich-Shafer) replied to her staff with the following email on October 25, 2023: "I do think we should change the name on the TI account (1901865) back to Oakway Golf."  (*Id*.)

On November 9, 2023, Defendant (through counsel) sent a letter to STEM Holdings and to a retired lawyer who had formerly represented Plaintiff.  (Ptf's Response, Ex 1 at 2.)  In that letter, Defendant explained its interpretation of the lease and stated: "Assessment and Taxation has reviewed the account and has determined that the improvement only account was not appropriate.  The account has been changed to reflect ownership of the account has reverted to Oakway Golf, Inc."  (*Id*., Ex 1 at 3.)  A 2023 tax statement enclosed with that letter billed Plaintiff $56,176.07 for four years of tax, interest, foreclosure penalty, foreclosure costs, and "clerical error" associated with the subject account.  (*Id*., Ex 1 at 4–5.)

## II.  ANALYSIS

The issue is whether Defendant's changes to the tax rolls satisfied the requirements of ORS 311.205.[1]  Plaintiff challenges Defendant's action on two grounds: (1) that Defendant's direction to correct the roll did not comply with ORS 311.205(2)(a), and (2) that Plaintiff was not given adequate notice.

### A.     *Direction for the Correction*

In general, tax assessors "may not make changes in the roll after September 25 of each year" except to reduce property value, to settle an appeal, "or as otherwise provided by law." ORS 308.242(1).  Defendant's internal emails show that it changed the subject account no earlier

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2021.

than October 25, 2023, so the change would be prohibited by ORS 308.242(1) unless some other law provided Defendant with authority.

In its Response to Plaintiff's Motion for Summary Judgment, Defendant asserts that it "changed the name on the roll pursuant to ORS 311.205(1)(b)(C)(i)[.]" That provision allows assessors to correct errors other than valuation judgment errors, including "[t]he elimination of an assessment to one taxpayer of property belonging to another on the assessment date[.]" ORS 311.205(1)(b)(C)(i).

ORS 311.205(2)(a) describes the process for correcting the roll pursuant to ORS 311.205:

> "The officer in charge of the roll shall make corrections with the assent and concurrence of the assessor or the department. *The direction for the correction must be made in writing and state the type of error and the statutory authority for the correction.* The officer may correct the roll for any year or years not exceeding five years prior to the last certified roll."

ORS 311.205(2)(a) (emphasis added). Thus, the statute's terms require that a direction to correct the roll be written and contain two elements: (1) a statement of the error type, and (2) a statement of the statutory authority for the correction.

In the present case, the direction for the correction was written; it occurred in the assessor's email. As Defendant acknowledges in its surreply, nowhere in that email or in the string of emails to which that email replied was there a statement of the statutory authority for correcting the roll. The direction therefore does not comply with ORS 311.205(2)(a).

Defendant "strongly disagrees with any notion that failure to include a citation to a statute in an internal communication will expressly invalidate the directive and subsequent action taken to correct the name on the roll to the accurate owner." (Def's Surreply at 5.) Defendant does not justify that disagreement with the support of a statute or other source of law.

Defendant's "strong[] disagree[ment]" here evokes the position of the Department of

Revenue in *Preble v. Department of Revenue*, 331 Or 320, 14 P3d 613 (2000). When the department intends to assess an income tax deficiency after an examination or audit, it is required by statute to give taxpayers notice containing the following information:

"Except as provided in subsection (3) of this section, the notice shall:

"(a) State the reason for each adjustment;

"(b) Give a reference to the statute, regulation or department ruling upon which the adjustment is based; and

"(c) Be certified by the department that the adjustments are made in good faith and not for the purpose of extending the period of assessment."

ORS 305.265(2). In *Preble*, the department's notice to the taxpayer had omitted the third component, the certificate of good faith. *Preble*, 331 Or at 324. The department argued that its notice remained valid, even though it lacked the certificate. *Id*. Our Supreme Court disagreed with the department's position, holding that the lack of a certificate rendered the department's notices invalid. *Preble*, 331 Or at 326. The court observed that the statute applied the word "shall" to all three components of the notice—the reason, the authority, and the certificate. *Id*. at 325. Considering the first two components more obviously necessary for a valid notice, the court reasoned that "shall" applies with equal force to the certificate of good faith:

"Without notice of the reason or the authority for each adjustment, the taxpayer could face significant disadvantages in contesting the proposed deficiency; indeed, the taxpayer might be unable to object at all. Such a 'notice' actually would notify the taxpayer of very little. Because a notice of deficiency is invalid if it does not include the reason or the authority for each adjustment, it also is invalid if it does not include the certificate."

*Id*. The court rejected the department's argument that omission of a certificate was harmless error as follows:

"The certification assures the taxpayer that the department is acting in good faith and not for the purpose of extending the assessment period. The statute evinces a legislative intent that makes the representation of good faith as important as good

faith itself. We have no authority to nullify that legislative intent."

*Id*.

In the present case, as in *Preble*, the relevant statute uses mandatory language: "The direction for the correction *must* be made in writing and state the type of error and the statutory authority for the correction." ORS 311.205(2)(a) (emphasis added).

Defendant's characterization of the direction as an "internal communication" suggests a possible distinction between it and the taxpayer notice at issue in *Preble*. One might argue that because the direction is merely for internal use, there is no harm done if the officer in charge of the roll is willing to accept it.

However, the statutes governing changes to the tax roll consistently emphasize regularity, recordkeeping, and accountability. Officers in charge of the roll must make corrections under ORS 311.205 in a manner that is "regular and valid." ORS 311.205(3). Those corrections "must be distinguishable upon the roll," must be dated, and "must identify the officer making the correction." *Id*. Similarly, officers making corrections ordered by property value appeals boards must ensure that the roll "clearly show[s] that the assessor's prior entry, if any, has been superseded" and that the change was ordered by the board. ORS 309.120. Officers using an alternative procedure for changing the roll must retain "sufficient evidence to indicate the propriety of the transaction" as a public record. ORS 311.150(1).

Given that context and the text of ORS 311.205(2)(a), there is no ground for treating a written statement of statutory authority as optional. That statement "must" be included in the written direction. ORS 311.205(2)(a). That the direction is an internal communication makes no difference; as with the statute in *Preble* that made "the representation of good faith as important as good faith itself," ORS 311.205(2)(a) makes the creation of a public record demonstrating

statutory authority as important as actually having that authority. *See Preble*, 331 Or at 325. An officer who has not received such a statement lacks evidence showing the propriety of a roll change. *See* ORS 311.150(1). If the officer nevertheless changes the roll, that roll change is not "regular and valid." See ORS 311.205(3).

Because Defendant's direction to the officer in charge of the roll did not include statutory authority for changing the taxpayer's name on the subject account, it was invalid and the roll was not legally changed. *See* ORS 311.205(2)(a).

B. *Notice*

As an alternative basis for relief, Plaintiff alleges that it did not receive sufficient notice before being assessed on an account it does not own. Defendant assessed the subject account to Plaintiff after consulting with Plaintiff's tenant in Plaintiff's absence. In so doing, Defendant's process echoed what allegedly occurred in 2019, when it created the subject account after consulting Plaintiff and without consulting Plaintiff's tenant. The court does not reach the issue of notice at this time because, as discussed above, the roll correction was invalidated by the defect in the direction given to the officer in charge of the roll.

### III. CONCLUSION

Because Defendant's direction to correct the tax roll did not state statutory authority as required by ORS 311.205(2)(a), Defendant's change of the taxpayer's name on the subject account was invalid. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's Motion for Summary Judgment be granted. Defendant shall reverse its change of the taxpayer named in Account 1901865.

POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on October 3, 2024.*